# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 18-0660V
UNPUBLISHED

| | |
|---|---|
| JUDY WELCH,<br><br>                        Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                        Respondent. | Chief Special Master Corcoran<br><br>Filed: September 2, 2021<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain<br>and Suffering; Influenza (Flu)<br>Vaccine; Shoulder Injury Related to<br>Vaccine Administration (SIRVA) |

*Bridget Candace McCullough, Muller Brazil, LLP, Dresher, PA,* for Petitioner.

*Amanda Pasciuto, U.S. Department of Justice, Washington, DC,* for Respondent.

## **DECISION AWARDING DAMAGES**[1]

On May 10, 2018, Judy Welch filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine she received on August 31, 2016. Petition at 1. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters. Because the parties could not agree on all damages components, the matter was designated for SPU "Motions Day," and argument was heard on August 27, 2021.

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons set forth below, and as represented during the hearing,[3] I find that Petitioner is entitled to compensation in the amount **$55,459.00**, **representing $55,000.00 for actual pain and suffering, plus $459.00 for past unreimbursed expenses.**

I. **Relevant Procedural History**

On July 8, 2019, Respondent filed his Rule 4(c) Report recommending that entitlement to compensation be denied under the terms of the Vaccine Act. Respondent's Report at 1. ECF No. 22. However, on February 26, 2021, Respondent filed an Amended Rule 4(c) Report indicating that he "does not dispute that [P]etitioner has satisfied all legal prerequisites for compensation under the Act." Respondent's Rule 4(c) Report at 6 (citing 42 U.S.C. § 300aa-13).[4] ECF No. 37 at 6. Thereafter, the parties attempted to informally resolve the issue of damages but were able to agree only to a sum for past unreimbursed out-of-pocket expenses to be paid to Petitioner. ECF No. 42. I subsequently proposed that the parties be given the opportunity to argue their positions at a motions hearing, at which time I would decide the disputed damages issue. ECF No. 47.

Prior to hearing, both sides filed briefs setting forth their respective positions. The hearing was held on August 27, 2021. Petitioner's Brief in Support of Damages, dated May 19, 2021 ("Br."), ECF No. 44; Respondent's Brief on Damages, dated June 18, 2021 ("Opp."), ECF No. 45; Reply, dated July 1, 2021 ("Reply"), ECF No. 46.

Petitioner requests $75,000.00 in actual pain and suffering, arguing that her course of treatment (including an MRI and 6 sessions of physical therapy) was severe and warrants an award at that level. Br. at 1, 8. She also maintains that she continued to seek care for her injury nearly twelve months post-vaccination, suffered from the symptoms of SIRVA for almost sixteen months, and rated her pain as a seven on a ten-point scale more than six months after her injury. *Id.* at 8. Respondent, by contrast, proposes an award of no more than $25,000.00. Opp. at 2. He argues that "the record . . . reflects a petitioner who sustained a relatively minor SIRVA injury and received relatively little treatment for her SIRVA." *Id.*

---

[3] *See* Minute Entry dated August 27, 2021. The transcript of this hearing, which was not yet filed as of the date of this Decision, is hereby incorporated into this Damages Decision by reference.

[4] Respondent's Amended Rule 4(c) Report was in response to my November 18, 2020 Findings of Fact in which I determined that "the flu vaccine alleged as causal was administered in Petitioner's right deltoid; that her pain and reduced range of motion were limited to the shoulder in which the intramuscular vaccine was administered; and that the onset of Petitioner's SIRVA-related pain occurred within 48 hours of vaccination." ECF No. 32 at 1-2.

2

## II.     Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include an award "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment awarding such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). Petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no precise formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("Awards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation."). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid in the resolution of the appropriate amount of compensation for pain and suffering in each case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, a special master may rely on his or her own experience adjudicating similar claims. *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated that special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims). Importantly, however, it must also be stressed that pain and suffering is not determined based on a continuum. *See Graves v. Sec'y of Health & Human Servs.*, 109 Fed. Cl. 579 (2013).

### III. Appropriate Compensation for Petitioner's Pain and Suffering

#### a. Severity and Duration of Pain and Suffering

Pain and suffering is the sole disputed component of damages herein, so only the legal standards bearing on its calculation are relevant. In this case, awareness of the injury is not contested. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

When performing this analysis, I review the record as a whole, including the medical records and affidavits filed, written briefs, and argument at the August 27th Motions Day hearing. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and rely upon my experience adjudicating these cases. Based upon the above, I note and find the following:

- Ms. Welch received the flu vaccine alleged as causal on August 31, 2016. Exhibit 1 at 1; Ex. 8 at 1. Despite presenting to her primary care provider ("PCP") on October 4, 2016, Petitioner waited until her appointment on December 19, 2016 (110 days post-vaccination) to discuss her right arm issues. Ex. 2 at 8-12. The medical record documenting this visit indicates that Petitioner described an "ache" as well as "off and on discomfort." *Id.* at 10.

- Petitioner presented to her PCP on February 27, 2017 and stated that she continued to experience right arm pain that "feels like an ache." Ex. 2 at 6-8. It was noted that Petitioner had "full range of motion of the right arm and shoulder without any pain or limitation." *Id.* at 8. The medical record documenting this visit indicates that Petitioner was "comfortable just using over-the-counter [medication] until she sees orthopedics." *Id.*

- On March 13, 2017, Petitioner presented to an orthopedist for an evaluation of her right shoulder. Ex. 4 at 3-4. Petitioner stated that her pain had increased since the date of vaccination and rated her pain as a seven on a ten-point scale. *Id.* at 4. The orthopedist noted that sleeping on her right arm as well as the performance of certain activities led to an increase in Petitioner's pain. *Id.*

- Between March 22 and April 6, 2017, Petitioner completed 6 sessions of physical therapy. Ex. 5. The note documenting her initial evaluation indicates that Petitioner rated her pain as an eight on a ten-point scale. *Id.* at 13. Although Petitioner's active range of motion was stiff, it was within normal limits. *Id.*

Petitioner was assessed with "[r]ight shoulder/arm tendinitis/bursitis." *Id.*

- At Petitioner's fourth physical therapy visit on April 3, 2017, she rated her pain as ranging from zero to one on a ten-point scale while at rest, and ranging from two to six at its worse. Ex. 5 at 8.

- Petitioner presented to her orthopedist on April 13, 2017 with complaints of continued right shoulder pain. Ex. 4 at 2. Although Petitioner stated that she had better use of her right shoulder, it was noted that she continued to experience "pain over the lateral aspect of her right shoulder in the area of the deltoid." *Id.*

- Petitioner underwent an MRI on July 6, 2017. Ex. 6. It showed a "full-thickness slightly retracted rotator cuff tear," an "amorphous intrasubstance superior labral tear," and "mild to moderate intra-articular biceps tendinosis with extra articular biceps tendinosis with extraarticular tenosynovitis." *Id.* at 3.

- On July 19, 2017, Petitioner returned to her orthopedist to discuss the results of her MRI. Ex. 4 at 1. The physician's impression was "[r]otator cuff tear right shoulder supraspinatus with retraction, glenoid labral tear and biceps tendinosis." *Id.*

- Petitioner presented to her PCP on August 21, 2017. Ex. 2 at 4-6. Despite articulating her own concern regarding the "tricep area of the right humerus from the flu shot of last year," Petitioner's doctor determined that she had "excellent full range of motion with abduction and internal rotation without any pain." *Id.* at 5.

- On December 21, 2017 (over one-year post-vaccination), Petitioner presented to her PCP "simply to have a correction on the document that was entered regarding her flu vaccine in 2016." Ex. 1 at 2-4. During this visit, Petitioner stated that she had ongoing pain in her right arm. *Id.* at 3.

- In her supplemental affidavit, signed on July 18, 2018, Petitioner states that she initially delayed seeking medical treatment "because I felt that my right shoulder pain would lessen and eventually go away." Ex. 8 at 2. Petitioner further states that she continues to have "definite soreness" in her right shoulder and that using a computer mouse, lawn mowing, opening certain doors, and sleeping on her right side cause pain. *Id.*

The case record overall establishes that Ms. Welch experienced a relatively mild SIRVA, which did not necessitate immediate care, surgery, or lengthy overall treatment. As noted above, Ms. Welch first sought care for her right shoulder on December 19, 2016 -- 110 days following her vaccination. Petitioner attributes this delay to her initial belief that the pain would subside on its own. Ex. 8 at 2. However, had Ms. Welch's initial pain been notably severe, she would have likely sought medical care sooner. Indeed, when Petitioner finally did seek treatment, she described feeling only an "ache," further underscoring the mild nature of her injury. Ex. 2 at 10.

Although it is true Ms. Welch reported an increase in pain during her first orthopedic appointment on March 13, 2017, as well as in the immediately following months, it appears that she had significantly recovered by that fall, as reflected by the lack of any treatment after August 21, 2017. Indeed, it was on this date that Petitioner's PCP noted that she had "excellent full range of motion with abduction and internal rotation without any pain." Ex. 2 at 5.

I also note that Ms. Welch underwent entirely conservative treatment. She did not receive any cortisone injections, and only underwent six physical therapy sessions. Further, in February 2017, she expressed comfort in using only over-the-counter medication for pain relief. Ex. 2 at 8.

The aforementioned factors figure into the amount to be awarded for Ms. Welch's pain and suffering. Based upon them, I find that Petitioner's course of treatment is not completely comparable to Petitioner's proposed prior decisions, *Attig, Kim, Marino* and *Bordelon*.[5] Rather, it was similar to the experiences of petitioners in two prior cases: *Dagen v. Sec'y of Health & Human Servs.*, No. 18-0442V, 2019 WL 7187335, at *10 (Fed. Cl. Spec. Mstr. November 6, 2019) (awarding $65,000.00 for pain and suffering after finding that the claimant's "pain was fairly significant in the first two months post-vaccination, but progressively eased in the ensuing period, with her movement impairment also largely (though not totally) improved within seven months of vaccination"), and *Knauss v. Sec'y of Health & Human Servs.*, No. 16-1372V, 2018 WL 3432906 at *7 (Fed. Cl. Spec. Mstr. May 23, 2018)(awarding $60,000 for pain and suffering following a SIRVA wherein petitioner sought treatment three months post-vaccination, underwent 15 physical therapy sessions, received a steroid injection, and

---

[5] *Attig v. Sec'y of Health & Human Servs.*, No. 17-1029V, 2019 WL 1749405 (Fed. Cl. Spec. Mstr. Feb. 19, 2019)(awarding $75,000.00 for pain and suffering and $1,386.97 in unreimbursable expenses); *Kim v. Sec'y of Health & Human Servs.*, No. 17-0418V, 2018 WL 3991022 (Fed. Cl. Spec. Mstr. July 20, 2018)(awarding $75,000 for pain and suffering and $520 in unreimbursable expenses); *Marino v. Sec'y of Health & Human Servs.*, No. 16-0622V, 2018 WL 2224736 (Fed. Cl. Spec. Mstr. Mar. 26, 2018)(awarding $75,000.00 for pain and suffering and $88.88 in unreimbursable expenses); *Bordelon v. Sec'y of Health & Human Servs.*, No. 17-1892V, 2019 WL 2385896 (Fed.Cl. Spec. Mstr. Apr. 24, 2019)(awarding $75,000.00 for pain and suffering).

ultimately reported a 94 percent recovery with a pain level at 1.5).

A damages award comparable to these two cases is most warranted, although perhaps slightly less to account for the limited number of PT sessions and absence of cortisone injections. I thus award $55,000.00 in actual pain and suffering.

### b. Award for Past Unreimbursable Expenses

Ms. Welch also requests $459.00 in past unreimbursable expenses. Br. at 1. Respondent does not dispute this sum, and therefore Petitioner is awarded this sum without adjustment.

## IV.   Conclusion

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $55,459.00**, (representing $55,000.00 for Petitioner's actual pain and suffering, and $459.00 for unreimbursable medical expenses) **in the form of a check payable to Petitioner, Judy Welch.** This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of the Court is directed to enter judgment in accordance with this decision.[6]

**IT IS SO ORDERED.**

                                        **s/Brian H. Corcoran**
                                        Brian H. Corcoran
                                        Chief Special Master

---

[6] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.